IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ROBERT Z. WHIPPLE, III, #399615,    )
    )
    Plaintiff,    )
    )
v.    )    NO. 3:26-cv-00253
    )
CORECIVIC, et al.,    )    JUDGE RICHARDSON
    )
    Defendants.    )

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert Whipple, III, a state inmate in custody at the Trousdale Turner Correctional Center (TTCC), filed a pro se civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1), an application for leave to proceed in forma pauperis (IFP) (Doc. No. 2), a Motion to Order CoreCivic to Provide a Certified Copy of Plaintiff's Trust Fund to the Court (Doc. No. 3), and a Motion for Evidentiary Hearing, TRO, and/or Preliminary Injunction. (Doc. No. 7.)

### I. THE FILING FEE

As recognized in Plaintiff's filings, his IFP application is incomplete. He has not provided an inmate trust account history (for at least the past six months) and current balance certified by an "appropriate official," as the pauper statute requires. 28 U.S.C. § 1915(a)(2). He has moved the Court to order TTCC/CoreCivic officials to provide such certification, attaching proof that he used a form to deposit a "TTCC Six Month Trust Fund Certificate Request" with the TTCC Librarian on February 23, 2026. (Doc. No. 3-1 at 1.) Plaintiff states that the TTCC Librarian advised him on March 2, 2026—one week after Plaintiff signed the request—that she had submitted the form to the appropriate office. (Doc. No. 3 at 1.) That same day, having not received the certificate

requested and surmising that "this is CoreCivic's wa[y] of trying to evade being sued" (Doc. No. 3 at 1), Plaintiff filed his motion to compel the certificate's production.

The Motion to Order CoreCivic to Provide a Certified Copy of Plaintiff's Trust Fund to the Court (Doc. No. 3) is **DENIED WITHOUT PREJUDICE**. At this point, Plaintiff has documented that he made one request for a certificate that has not yet been answered. He must persist in seeking to meet this statutory requirement before further action to compel the certification is justified.

The Court expects TTCC officials to cooperate with, not frustrate Plaintiff's efforts to obtain the trust account information necessary to satisfy the requirements for pauper status under federal law. In addition to frustrating Plaintiff's efforts, refusal to provide trust account certification also frustrates this Court's ability to rule on his IFP application—which the Court cannot abide. *See Black v. Thompson*, No. 2:21-cv-2167-TLN-EFB P, 2022 WL 2164764 (E.D. Cal. May 6, 2022) (issuing order to nonparty jail official under the All Writs Act, 28 U.S.C. § 1651(a), to compel production of certified statement after plaintiff documented multiple unsuccessful attempts to obtain certification).

Lacking the necessary certification of Plaintiff's six-month account history, his IFP application (Doc. No. 2) is **DENIED WITHOUT PREJUDICE** to renewal as described herein. The Clerk is **DIRECTED** to mail Plaintiff a blank IFP application (Form AO 240), including this District's form entitled "Certificate of Prisoner Institutional/Trust Fund Account Activity." To proceed with his lawsuit, Plaintiff **MUST** either pay the $405 filing fee in full or complete the application and return it—along with the Certificate form completed by an appropriate TTCC official—to the Court within **30 DAYS** of this Order's entry on the docket.

If he must again seek pauper status, and if trust account custodians again fail to provide the

required certification, Plaintiff may present those officials with this Order when seeking to obtain their compliance with federal law. Otherwise, it is not the practice of this Court to involve itself in such matters, except as required under the Prison Litigation Reform Act, 28 U.S.C. § 1915(b), or upon a showing that prison officials are interfering with an inmate's attempt to pay the fee or secure documentation needed to support an application for pauper status. That said, if Plaintiff cannot obtain a certified copy of his trust account statement, he should file an affidavit or declaration made under penalty of perjury detailing his requests to obtain a certified copy. *See* 28 U.S.C. § 1746. This affidavit or declaration should include the names of the officials he has asked, the dates he asked them, and the form of the request—whether in person, by written communication, or some other means.

This action may be dismissed if, within 30 days of this Order's entry, Plaintiff fails to resolve the filing fee issue or file an affidavit or declaration made under penalty of perjury explaining his inability to do so.

## II. MOTION FOR EMERGENCY RELIEF

Despite the filing fee deficiency, the Court provisionally takes up Plaintiff's Motion for Evidentiary Hearing, TRO, and/or Preliminary Injunction. (Doc. No. 7, "the Emergency Motion".) The Emergency Motion asks "for an expedited evidentiary hearing and [to] order Defendant CoreCivic to transport [Plaintiff] to his appointments in Knoxville with Dr. Sean Jordan at the U.T. Medical Center" or, "in the alternative, ... to appoint counsel[.]" (*Id.* at 1.) Plaintiff certifies that he served the Emergency Motion on the TTCC Warden via in-house mail on the same day that he mailed it to the Court (*id.* at 2), though he says nothing about attempts to notify any other Defendants named in the Complaint. He claims that the TTCC law library no longer has physical law books or LexisNexis access, and that he is being deprived of access to a tablet that would allow

access to legal rules and authorities, whereas the "inmates at TTCC [who] are not involved in lawsuits against CoreCivic are provided tablets." (*Id.*)

Despite referring to a TRO (temporary restraining order), the Emergency Motion does not attempt to comply with Local Rule 65.01's procedural requirements of a memorandum of law, a proposed order, and certification of the reasons why notice to all opposing parties should not be required. M.D. Tenn. L.R. 65.01(b), (c).

However, the Emergency Motion also seeks a preliminary injunctive order (as distinguished from a TRO) for CoreCivic to transport Plaintiff to Knoxville for specialized medical care in the office of Dr. Sean Jordan. (Doc. No. 7 at 1.) The relevant allegations of the Complaint are referred to in the Emergency Motion (*id.*), and referred to below for present purposes as if they are true.

Dr. Jordan is a cardiothoracic surgeon who helped perform an esophagectomy on Plaintiff in August 2025, to treat esophageal cancer. (Doc. No. 1 at 3.) In the wake of this serious surgery, Plaintiff's ability to eat solid food is limited. Dr. Jordan directed that Plaintiff should receive six small meals per day as well as nutritional supplements, and "created a treatment plan requiring regular office visits and CT scans for Plaintiff in the first year following surgery." (*Id.*) Plaintiff was taken for post-surgery visits to Dr. Jordan when he was in the custody of the Knox County Sheriff's Office, as well as when he was transferred to state custody at the Bledsoe County Correctional Complex (BCCX) in October 2025.[1] (*Id.* at 5.) However, when Plaintiff was transferred to TTCC, the decision was made to discontinue his follow-up care with Dr. Jordan, whose practice was physically located a three-hour drive away from TTCC. (*Id.* at 4.) TTCC officials also refuse to provide the six small meals and supplements per day that Dr. Jordan

---

[1] BCCX is in Pikeville, Tennessee, roughly one hundred miles from Knoxville.

recommended, because such service is contra CoreCivic's policies. (*Id.*) CoreCivic also declined the TTCC Medical Director's request to send Plaintiff to be seen by a local oncologist. (*Id.*)

Since his August 2025 surgery, Plaintiff has lost 72 pounds. (*Id.*) After being transferred from BCCX to TTCC in January 2026, Plaintiff was not taken to his February appointment for a CT scan and office visit with Dr. Jordan. (*Id.* at 5.) He asks the Court to enjoin CoreCivic to resume transporting him to Knoxville to see Dr. Jordan, and claims that he will suffer irreparable injury in the absence of such an injunctive order "because 'up to 50% of patients treated with curative esophagectomy for esophageal cancer will develop recurrence,'" and "'[f]ollowing recurrence, life expectancy is a mere 16.6 to 33.4 months.'" (Doc. No. 7 at 2–3) (quoting Boerner T. et al., *Incidence and Management of Esophageal Cancer Recurrence to Regional Lymph Nodes After Curative Esophagectomy*, 152 INT'L J. CANCER 2109, 2109 (2023)).) The Complaint and Emergency Motion both allege that Plaintiff is being denied treatment for his esophageal cancer at TTCC, pursuant to CoreCivic's "policy of denying/delaying medical care to inmates in order to increase profits." (Doc. No. 1 at 5–6; Doc. No. 7 at 3.) Plaintiff also claims that CoreCivic is denying him access to his own medical records, "so [he] is unable to provide further documentation" of his condition. (Doc. No. 7 at 3.)

The four requirements for a preliminary injunction are that Plaintiff establish: (1) a "strong" likelihood of success on the merits; (2) that he will suffer irreparable injury absent injunctive relief; (3) that the balance of the equities favors the movant because the issuance of an injunction would not cause substantial harm to others; and (4) that the public interest would be served by the issuance of the injunction. *Sisters for Life, Inc. v. Louisville-Jefferson County*, 56 F.4th 400, 403 (6th Cir. 2022). The "core of the preliminary injunction" is irreparable harm—meaning harm that is "'not fully compensable by monetary damages.'" *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th

868, 883–84 (6th Cir. 2025) (quoting *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002)). Such harm must be proved by way of affidavit, declaration, or other "stringent" evidence. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (noting that "the proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion").

Plaintiff does not seek compensatory damages in this lawsuit; he "seeks declaratory and injunctive relief to cure the ongoing constitutional violations as well as punitive damages." (Doc. No. 1 at 15.) His Complaint and Emergency Motion are both verified; his averments "therefore carr[y] the same weight as would an affidavit for the purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir.1993) (explaining that where a party files a verified complaint, the allegations contained therein "have the same force and effect as an affidavit for purposes of responding to a motion for summary judgment")). However, without more (such as the testimony of a medical expert), this summary judgment-grade proof of irreparable harm is not sufficient at this point to warrant granting a preliminary injunction, *Leary*, 228 F.3d at 739, particularly when the filing fee issue has not yet been resolved.

Nevertheless, in light of Plaintiff's verified allegations concerning (1) his weight loss and legitimate fear of the recurrence of his esophageal cancer without continued post-surgical care from a qualified physician, (2) the fact that the county and state facilities that housed him before TTCC deemed it necessary to continue his care with Dr. Jordan, and (3) his inability to conduct any legal research or gain access to his medical records at TTCC, the Court finds it appropriate to appoint counsel in this case and will therefore grant the alternative request of his Emergency Motion. "Appointment of counsel in a civil case ... is a privilege that is justified only by exceptional

circumstances." *Lavado*, 992 F.2d at 605–06 (quoting *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)). Where, as here, such circumstances exist, the Court in its discretion may appoint counsel conditionally even though the issue of the filing fee has not yet been resolved. *See Rodriguez v. Stephens*, No. 5:13-CV-233-C, 2013 WL 12429969, at *1 (N.D. Tex. Oct. 28, 2013) ("Although Rodriguez has not [paid the filing fee or applied for pauper status], a conditional appointment would serve the interest of justice better than a further delay. Therefore, the appointment of ... counsel is made conditional upon the satisfaction of the filing fee requirement.").

Accordingly, Plaintiff's alternative request for the appointment of counsel, made within his Motion for Evidentiary Hearing, TRO, and/or Preliminary Injunction (Doc. No. 7 at 1), is **GRANTED**, on the condition that Plaintiff resolve the filing fee issue. The Clerk of Court is **DIRECTED** to retain counsel for Plaintiff from the civil appointment panel. After consulting with Plaintiff and reviewing his various filings, appointed counsel shall take all further appropriate actions to prosecute Plaintiff's viable claims and shall file an amended complaint in this action as soon as practicable after receiving the appointment and entering an appearance.

This action is **REFERRED** to the Magistrate Judge for management of the case, including disposition or recommended disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE